UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REINA C. MONTES, | No. 2:16-CV-01405-KJM-AC |
| Plaintiff, | |
| v. | ORDER |
| WELLS FARGO BANK, N.A.; NBS DEFAULT SERVICES, LLC, and DOES 1 through 10, inclusive, | |
| Defendants. | |

Plaintiff Reina C. Montes has thrice received loan modifications from Wells Fargo and has repeatedly applied for a fourth, but to no avail. She now sues Wells Fargo, alleging the bank's loan-denial procedures amount to negligence and violate California's Homeowner's Bill of Rights. Defendants' joint motion to dismiss the amended complaint, ECF Nos. 20, 22, and joint motion for summary judgment, ECF Nos. 27, 28, are now before the court. Plaintiff opposed the dismissal motions, both of which the court submitted on the briefs in May 2017, but plaintiff does not oppose the pending summary judgment motions. As explained below, the court GRANTS summary judgment for defendants and DENIES as MOOT defendants' dismissal motions.

1

I.  BACKGROUND

   A.  Plaintiff's Initial Loan and First Three Loan Modifications

Plaintiff borrowed $213,500 from Wells Fargo's predecessor, World Savings Bank, FSB, in November 2004 to buy a home in Sacramento, California. Statement of Undisputed Facts ("SUF") 1, ECF No. 27-5; *see also* First Am. Compl. ("FAC") ¶¶ 1, 7, ECF No. 19. Her loan was secured by a deed of trust on her property. SUF 1. Since then, plaintiff modified her loan in 2007, 2009 and 2013. SUF 3. Despite these loan modifications, in 2014, plaintiff could not make her loan payments and eventually filed for bankruptcy. SUF 4, 5. This lowered her credit score to below 500. SUF 6.

In December 2015, Wells Fargo told plaintiff she was still in default, warning if she did not pay her balance, then Wells Fargo would foreclose on her property. SUF 7. Wells Fargo advised that to avoid foreclosure, plaintiff could, among other things, again apply for a loan modification. SUF 7. Plaintiff did, submitting her application in October 2015. SUF 8. But Wells Fargo denied her application that same month finding plaintiff had already reached the maximum number of modifications allowed. SUF 9. She did not appeal the decision. SUF 10.

   B.  Plaintiff Attempts to Obtain a Fourth Loan Modification

Plaintiff then retained counsel. SUF 12. Through counsel, she applied in April 2016 for a fourth loan modification. SUF 12. Wells Fargo once again reviewed and denied the application. SUF 15. The denial was based, in part, on her income, which at the time was $17.56 per hour at twenty hours per week. SUF 14. Once again, plaintiff did not appeal the denial. SUF 17.

Five months later, plaintiff, on September 15, 2016, re-applied with counsel for a fourth loan modification. SUF 18. She based this request on her increased income, which was then $3,150 per month. SUF 19. Five business days later, on September 22, 2016, Wells Fargo wrote back, asking for an authorization letter from plaintiff's attorney, without which Wells Fargo could not directly communicate with plaintiff about her application. SUF 21. On September 29, 2016, after receiving the authorization letter, Wells Fargo formally acknowledged receipt of the application. SUF 22. Over the next two months, Wells Fargo told plaintiff's counsel the

application was under review, formally assigned Christine Segura as the "single point of contact" for the application, and requested additional documents to complete the application. SUF 24; *see also* Exs. E, H, T, ECF No. 27-3, at 7, 8, 13, 22, 192 (Ms. Segura's signed letters). Then, in late November 2016, Wells Fargo asked plaintiff for a final document to complete her application, which she provided on December 21, 2016. SUF 26. Wells Fargo denied plaintiff's loan modification application in a letter dated January 10, 2017, based partially on her reaching the maximum number of allowed modifications and partially on her income level. SUF 27; *see* Denial Letter, Ex. K, ECF No. 27-4, at 103-05.

### C. Default and Foreclosure Process

Plaintiff defaulted on her loan nearly three years ago and is still in default today. SUF 29. The foreclosure process formally began with a notice of default in January 2016, indicating an overdue balance of $16,000. SUF 30. Because plaintiff did not pay, a notice of trustee sale was recorded against her property on April 11, 2016. SUF 31. The total amount now due exceeds $202,000. SUF 32. Plaintiff concedes she cannot pay this amount. SUF 33. Despite her continuing default on the loan and her 2016 and 2017 loan modification denials, plaintiff's credit score has risen to approximately 630, where it has remained for months. SUF 35.

### D. Procedural History

Plaintiff sued Wells Fargo and defendant NBS Default Services, LLC, the party that recorded the default and trustee sale notices against her property, in state court. Ex. A, ECF No. 1, at 10-30. Wells Fargo removed to this court on June 22, 2016. *See* Removal Notice, ECF No. 1. The court granted defendants' joint motion to dismiss the initial complaint for failure to state a claim. *See* First Dismissal Mot., ECF No. 5; Dismissal Order, ECF No. 18 (issued Mar. 23, 2017). Plaintiff promptly filed an amended complaint, raising similar allegations. *See generally* FAC. Specifically, plaintiff asserts a negligence claim and three claims for violations of the Homeowner's Bill of Rights ("HBOR"), California Civil Code §§ 2923.6 *et seq*. Wells Fargo again moved to dismiss. ECF No. 20. Defendant NBS joined the motion. ECF No. 22.

Plaintiff opposed. Dismissal Opp'n, ECF No. 21. The court submitted this dismissal motion on May 16, 2017. ECF No. 26.

On August 1, 2017, Wells Fargo moved for summary judgment. Mot., ECF No. 27. NBS joined the motion, citing each argument as equally applicable to both defendants. ECF No. 28. Plaintiff has not opposed summary judgment. On October 6, 2017, the court held a hearing on summary judgment, at which defense counsel appeared telephonically; plaintiff's counsel appeared in person and affirmed plaintiff's non-opposition to summary judgment. H'rg Mins., ECF No. 38. Because the dismissal and summary judgment motions pertain to the same claims and arguments, and because discovery has now closed, the court first assesses whether summary judgment is appropriate.

II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Then the burden shifts to the nonmovant to show "there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the nonmovant] must do more than simply show that there is some metaphysical doubt as to the material facts"). Also, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48.

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587-88. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). As relevant here, the Ninth Circuit deems it an error to grant a summary judgment motion simply because the nonmovant did not oppose. *See In re Rogstad*, 126 F.3d 1224, 1227 (9th Cir. 1997) (collecting cases). "The party opposing the motion is under no obligation to offer affidavits or any other materials in support of its opposition . . . ." *Id.* (citation omitted); *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 967 (9th Cir. 1981) (explaining court should not grant summary judgment where movant's evidence is lacking just because there was no opposition). Rather, the burden lies exclusively with the defendant to cast enough doubt, with supporting evidence, on plaintiff's claims.

III.     ANALYSIS

    A.     Negligence

Plaintiff's first claim asserts Wells Fargo was negligent in reviewing her prospects for foreclosure prevention assistance and its negligence ultimately damaged her credit score. *See* FAC ¶¶ 60-71. "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted).

Here, plaintiff's claim cannot survive summary judgment. The court's prior dismissal order concluded Wells Fargo may owe plaintiff a duty of care in reviewing her application, and Wells Fargo now asks this court to reconsider that conclusion in light of recent California case law. *See* Mot. at 10 (citing *Conroy v. Wells Fargo Bank, N.A.*, 13 Cal. App. 5th 1012 (2017)). Because the record shows neither a breach of that duty nor resulting damages, the court need not reach that reconsideration request.

Wells Fargo has met its burden to show no reasonable juror could find a breach of a duty of care here. Wells Fargo received plaintiff's application on September 15, 2016, wrote

back within five days, formally acknowledged receipt by September 29, 2016, appointed a single point of contact to handle the review, requested additional information, and began reviewing the application in October 2016. SUF 21-25. Less than three weeks after the application was ultimately deemed "complete," Wells Fargo issued its denial decision. SUF 26 (application complete on Dec. 21, 2016 after receiving plaintiff's explanation letter); SUF 27 (denial decision issued Jan. 10, 2017). The total time from submission to denial was less than four months, and plaintiff's counsel maintained communication with Wells Fargo throughout. *See* SUF 18-24; *see generally* Exs. E, F, G, ECF No. 27-3 (October and November 2016 emails and letters between plaintiff's counsel and Wells Fargo's counsel about application).

The court has located no case holding that a delay lasting less than four months constitutes a breach of the duty of care. Because plaintiff does not oppose summary judgment, her position regarding a breach is reflected only in her complaint and her opposition to the pending second dismissal motion, neither of which can be considered as evidence here. *See* FAC ¶¶ 55-59; Dismissal Opp'n at 7 (arguing Wells Fargo breached its duty of care when it "'sat' on Plaintiff's submitted Second Application" for months and "pretend[ed] to be in the process [of reviewing it], at any given time, and at every status update inquiry from Plaintiff or Plaintiff's counsel . . . ."). The evidence does not reflect the type of delay or mismanagement that may constitute a breach. *Cf. Becker v. Wells Fargo Bank, N.A.*, No. 2:10–cv–02799 LKK KJN PS, 2012 WL 6005759, at *12 (E.D. Cal. Nov. 30, 2012) (noting "some courts have found a 'duty' to be sufficiently alleged . . . from [allegations of] ongoing modification negotiations rife with delays, lost documents, and representations that a modification would be given") (citations omitted); *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10–0290 PVT, 2010 WL 1881098, at *1, 3 (N.D. Cal. May 10, 2010) (finding a breach of duty adequately alleged where plaintiff pled servicer "mishandl[ed]" the application, routing it to the wrong internal department for review).

Additionally, no evidence raises questions about Wells Fargo's reasons for denying the application. Indeed, the information upon which Wells Fargo based its denial, plaintiff's reported monthly income of $3,145 and monthly expenses of $769.45, essentially

6

mirrors the financial information plaintiff herself included in the operative complaint. *Compare* FAC ¶ 41 *with* SUF 27.

Even if Wells Fargo breached a duty of care by delaying the modification review process, no facts of record suggest this delay caused plaintiff harm. The only harm plaintiff alleged is a diminished credit score. FAC ¶¶ 60-71. In her deposition testimony she concedes her credit score is actually higher now than it was before the application denials. *See* Montes Dep. 27:3-28:2, 79:6-19, 80:13-15, ECF No. 4. Her temporary credit score dip corresponds to the date she filed for bankruptcy, after which this score steadily rose. *See id.* 27:3-6. No evidence shows plaintiff suffered a cognizable harm stemming from the four months Wells Fargo took to review her application. *See Ruiz v. Gap, Inc.*, 380 F. App'x 689, 691 (9th Cir. 2010) ("California has long held that '[i]t is fundamental that a negligent act is not actionable unless it results in injury to another[.]'") (quoting *Fields v. Napa Milling Co.*, 164 Cal. App. 2d 442, 447 (1958)).

Based on the record before the court, no reasonable fact finder could disagree that Wells Fargo's denial decision was both sound and timely, and that the time Wells Fargo took to make the decision did not cause plaintiff's alleged credit score depletion. Because there is no triable issue as to breach or damages, the court need not analyze the claim further. Plaintiff's negligence claim cannot survive summary judgment.

B. Homeowner's Bill Claims

Plaintiff's remaining three claims arise from the HBOR, a statute providing loan borrowers with a private right of action to challenge certain material HBOR violations. *Penermon v. Wells Fargo Bank, N.A.*, 47 F. Supp. 3d 982, 993 n.2 (N.D. Cal. 2014). Plaintiff seeks both injunctive relief and damages for three HBOR violations Wells Fargo allegedly committed while reviewing her September 2016 loan modification application. Specifically, she alleges Wells Fargo "dual-tracked" her application, untimely acknowledged receipt of her application and did not assign her a single point of contact. *See* FAC ¶¶ 73-114. Again, because plaintiff does not oppose summary judgment, she offers no evidence to support these claims. The record shows no triable issues as to these HBOR violations.

1. Dual-Tracking

Plaintiff's "dual-tracking" claim under § 2923.6 cannot survive. This HBOR provision prohibits lenders from reviewing a loan modification application while simultaneously proceeding with the foreclosure process, i.e., "dual-tracking." *See* Cal. Civ. Code § 2923.6(c). Wells Fargo notes plaintiff submitted the relevant application in September 2016, only after defendant NBS had recorded the default notice in January 2016, commencing the foreclosure process. At hearing, counsel for Wells Fargo argued there is no requirement that the default notice have been rescinded; the dual tracking prohibition requires only that the process not be advanced while a loan modification application is pending review. The court agrees this reading comports with the plain language of the statute. Cal. Civ. Code § 2923.6(c) ("If a borrower submits a complete application for a first lien loan modification . . . a mortgage servicer . . . shall not <u>record</u> a notice of default, or conduct a trustee's sale, while the complete first lien loan modification application is pending."). No facts of record show the foreclosure process here advanced between September 2016 and January 2017, when plaintiff's loan modification application was being reviewed. Indeed, formal foreclosure proceedings have been stalled since January 2016, pending this litigation; a foreclosure sale is now scheduled for November 2017, if plaintiff is unable to sell her home as she now hopes. The record therefore shows no dual-tracking occurred.

Another reason supports this court's conclusion that plaintiff's § 2923.6 claim cannot survive summary judgment. An unpublished, persuasive Ninth Circuit opinion explains § 2923.6 does not apply where, as here, a plaintiff has already defaulted on prior loan modifications. *Deschaine v. IndyMac Mortg. Servs.*, 617 F. App'x 690, 694 (9th Cir. 2015); *see also Smith v. Wells Fargo Bank, N.A.*, No. 15-CV-01779-YGR, 2016 WL 283521, at * 3 (N.D. Cal. Jan. 25, 2016) ("under section 2923.6(c)(3), a borrower who already obtained and defaulted on a first lien loan modification is not entitled to the protections against recording of notices and conducting a trustee's sale during the pendency of a later loan modification application."). Plaintiff, here, has defaulted on not just one but three prior loan modifications.

In short, no reasonable fact finder could conclude dual-tracking occurred here, and, even if it had, plaintiff's prior defaults render this particular HBOR protection inapplicable in any event. Plaintiff's § 2923.6 claim cannot survive.

### 2. Single Point of Contact

Plaintiff's § 2923.7 claim for Wells Fargo's alleged failure to assign plaintiff a single point of contact also cannot survive. The relevant provision states, "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Cal. Civ. Code § 2923.7(a). Wells Fargo has shown beyond dispute it complied with this requirement. The October 21, 2016 letter the complaint references, *see* FAC ¶ 85, which is now properly before the court, introduces the point of contact, Christine Segura. *See* Ex. E at 8. Ms. Segura signed several letters pertaining to plaintiff's application. *See* Exs. E, H, T, ECF No. 27-3, at 7, 8, 13, 22, 192 (signed letters). Thus, there was no failure to assign a single point of contact. That plaintiff's counsel chose to communicate primarily through Wells Fargo's counsel does not change that Wells Fargo assigned a point of contact. The record here raises no doubt about Wells Fargo's compliance with § 2923.7. This claim cannot survive.

### 3. Five-Day Written Acknowledgement

Plaintiff's § 2924.10 claim also cannot withstand summary judgment. This provision requires "the mortgage servicer shall provide written acknowledgment . . . within five business days of receipt" of a "complete first lien modification application." Cal. Civ. Code § 2924.10(a). Plaintiff submitted her application on September 15, 2016. SUF 18. Wells Fargo responded to her application within five business days, asking for the letter from her attorney authorizing Wells Fargo to correspond directly with plaintiff. SUF 21; Ex. E ¶ 10. Wells Fargo explained at hearing the application was deemed submitted only after September 23 or 24, 2016, when Wells Fargo received that authorization letter. Wells Fargo then formally acknowledged receipt of the application on September 29, 2016, which falls within the five business day rule. SUF 22; FAC ¶ 46.

9

Even if there is a technical violation of § 2924.10 here, the violation is not "material." *See Cornejo v. Ocwen Loan Servicing, LLC*, 151 F. Supp. 3d 1102, 1113 (E.D. Cal. 2015) (material violation one where "the alleged violation affected a plaintiff's loan obligations or the modification process.") (citations omitted); *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 79 (2013) (in the HBOR context, an alleged statutory violation causing no real damage is "subject to the maxim *de minimis non curat lex—i.e.*, the law does not concern itself with trifles.") (italics added) (citation omitted); *see also* Cal. Civ. Code § 2924.12(a) (permitting a borrower to "bring an action for injunctive relief to enjoin a material violation."). The record reflects no apparent damage caused by the allegedly untimely acknowledgement. This claim cannot survive.

In sum, not one of plaintiff's HBOR claims against Wells Fargo survives summary judgment.

    C.    Defendant NBS: Qualified Immunity

Defendant NBS, the party that recorded the default notice and notice of trustee sale against plaintiff's property, raised a separate argument for qualified immunity against liability based on its statutory-complaint notice and recording functions. ECF No. 28. Because the analysis above leaves no claims remaining against NBS, the court need not reach the immunity discussion.

IV.    CONCLUSION

The court GRANTS summary judgment for defendants in full. Because no claims remain, the court DENIES as MOOT defendants' motions to dismiss.

This order resolves ECF Nos. 20, 22, 27, 28. The Clerk of the Court shall enter judgment and close this case.

IT IS SO ORDERED.

DATED: October 19, 2017.

                                  UNITED STATES DISTRICT JUDGE